# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1572

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Goldie Lujoyce Holt, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: September 23, 2011
Filed: December 19, 2011

_____

Before LOKEN, BEAM, and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Goldie Lujoyce Holt pleaded guilty to aiding and abetting a scheme to defraud Wal-Mart of more than $675,000 by the use of fictitious money transfers. Holt stipulated in the plea agreement to $265,747.32 in restitution to victim Wal-Mart. The Presentence Investigation Report ("PSR") recommended that her sentence include that obligation, as the Mandatory Victims Restitution Act (MVRA) required. See 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). Just before her July 2008 sentencing, Holt transferred a substantial portion of her cash assets to her boyfriend. She subsequently violated a condition of supervised release by failing to make two scheduled restitution

payments. After several hearings, the district court[1] revoked supervised release, determined that Holt's pre-sentencing transfer was fraudulent, and sentenced her to one year and one day in prison. Holt appeals, arguing the court abused its discretion because she did not willfully violate the terms of her supervised release. We affirm.

## I.

The PSR reported that Holt's largest asset was a $65,000 savings account, the remains of a March 2008 insurance settlement resulting from a fire that destroyed her home. At the July sentencing, the district court learned that Holt transferred $43,540 from this account to her boyfriend, Robert Crouch, which he used the day before sentencing to purchase a $92,000 home. Although the $43,540 from Holt provided the entire down payment, Crouch was the only person named on the deed to the home. The court sentenced Holt to thirty months in prison, three years of supervised release, and $265,747.32 in restitution. It ordered her to pay $10,000 restitution within sixty days, noting she had specifically agreed to sell an automobile and a parcel of vacant real property to make that payment. The court also ordered government counsel to prepare and submit for defense counsel's review "language for me to put in the judgment and commitment" that would make the money transferred to Crouch "attachable under the MVRA." After briefing and another hearing, in September 2008 the court entered an Amended Order of Restitution that modified the restitution payment schedule to order that Holt pay $43,540 within 60 days of the Amended Order. The court found this amount reasonable based on equity in the home and the remaining $20,000 of insurance proceeds, but it did not "require that payment of the $43,540 come from any specific asset."

---

[1]The Honorable Billy Roy Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

Holt served her prison term and commenced supervised release in June 2010. Two months later, the government requested a show-cause hearing on her failure to make either the $10,000 or the $43,540 lump sum restitution payments. Holt's response argued that supervised release may not be revoked absent a finding that she willfully violated the court's restitution orders; that she used the $43,540 to provide a home for their daughter while in prison and for Holt after her release; that the home is in Crouch's name so she has no ability to sell it; that the car had been wrecked; and that she had not sold the vacant lot because of a tax lien and the cost of an appraisal. On March 3, 2011, after two show cause hearings and a revocation hearing at which Holt testified at length, the court found Holt guilty of willful failure to pay her restitution obligations, revoked her supervised release for failure to comply with the condition that she pay restitution as scheduled, and sentenced her to one year and one day in prison. Regarding the $43,540 obligation, the court explained:

> I find that her transfer of this money to Mr. Crouch on the eve of sentencing was fraudulent and fraud on the Court. . . . And I think it meets all of the factors under 28 [U.S.C.] Section 3304(b)(2).

> I've considered the alternatives to imprisonment and I don't believe any of them will suffice under all the facts and circumstances of this case. . . . [She has] flagrantly disregard[ed] orders of the Court.

## II.

A district court may revoke supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). In determining the appropriate punishment, if revocation is based on a failure to pay restitution, the court must consider, in addition to the sentencing factors in 18 U.S.C. § 3553(a), "the willfulness in failing to comply with the . . . restitution order, and any other circumstances that may have a bearing on the defendant's ability or failure to comply with the order." 18 U.S.C. § 3613A(a)(2).

These statutory requirements derive from the Supreme Court's decision in <u>Bearden v. Georgia</u>, 461 U.S. 660, 672 (1983), where the Court applied the Equal Protection and Due Process clauses of the Fourteenth Amendment and held:

> that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment . . . . If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment.

Whether Holt willfully refused to pay or acquire the resources to pay restitution are findings of fact that we review for clear error; if the failure to pay was willful, the district court is not *constitutionally* required to consider alternative measures of punishment. <u>United States v. Montgomery</u>, 532 F.3d 811, 814 (8th Cir. 2008).

In this case, the district court found that Holt willfully refused to pay and failed to make sufficient bona fide efforts to acquire the resources to pay primarily because her $43,540 pre-sentencing transfer to Crouch was fraudulent. The court supported this finding by referring to the non-exclusive factors for determining fraud under 28 U.S.C. § 3304(b)(2), a section of the Federal Debt Collection Procedures Act prescribing when a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States. A transfer is fraudulent as to a debt arising either before or after the transfer if the transfer is made "with actual intent to hinder, delay, or defraud a creditor." 28 U.S.C. § 3304(b)(1)(A). In determining actual intent, consideration "may be given" to the non-exclusive factors in § 3304(b)(2).[2]

---

[2]These factors are nearly identical to the "badges of fraud" that have been codified in state statutes governing the determination of a debtor's intent to defraud. <u>See</u> <u>In re Addison</u>, 540 F.3d 805, 813-14 n.11 (8th Cir. 2008).

On appeal, Holt argues only that the district court "incorrectly interpreted and applied" the § 3304(b)(2) factors in finding that her pre-sentence transfer to Crouch was made with "actual intent" to defraud. But that formulation misstates (or ignores) the issue we must decide -- whether the district court clearly erred in finding that Holt "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay," the inquiry mandated by <u>Bearden</u>. The district court was on sound ground in noting that the transfer to Crouch "meets all of the factors" for determining intent to defraud set forth in § 3304(b)(2). But the court was not required to find actual intent to defraud to satisfy <u>Bearden</u>, nor was it required to mechanistically recite and make findings on each of those factors to determine that Holt willfully violated the conditions of her supervised release.

In reviewing whether the district court complied with <u>Bearden</u>, we note first that the extensive record unquestionably confirms the court's finding that Holt willfully "failed to make sufficient bona fide efforts legally to acquire the resources to pay" her restitution obligation. She had stipulated to a substantial restitution obligation in the plea agreement and knew that restitution was recommended in the PSR. Yet on the eve of sentencing, she transferred substantially all her cash assets to boyfriend Crouch, knowing he would invest that money in a home solely owned by him. Under 28 U.S.C. § 3304, the transfer to Crouch was fraudulent as to Holt's impending restitution obligation: a transfer is fraudulent as to a debt arising "after the transfer is made . . . if the debtor makes the transfer . . . (B) without receiving a reasonably equivalent value in exchange for the transfer . . . if the debtor . . . (ii) . . . believed or reasonably should have believed that [s]he would incur, debts beyond [her] ability to pay." § 3304(b)(1)(B)(ii). Thus, the district court's finding that Holt willfully failed to make the $43,540 payment ordered by the court in September 2008, after it learned of her fraudulent conduct, was not clearly erroneous. It is irrelevant to this finding that Holt may be currently unable to pay the $43,540 because as a non-owner she cannot sell the home or secure a home equity loan.

Although it is not essential to a determination that the prison sentence complies with <u>Bearden</u>, we also conclude that the district court's finding of actual intent to defraud was not clearly erroneous. At the revocation hearing, Holt claimed that she made the transfer to Crouch so that her young daughter would have a home while Holt served her prison sentence. That is doubtless a relevant and legitimate personal circumstance. But it cannot justify a secretive, last-minute transaction that placed substantial assets identified in the PSR as available for restitution beyond the reach of the sentencing court. In addition, for nearly three years Holt inexcusably failed to make the $10,000 payment ordered by the court in July 2008, an order based upon her promise to sell specific property to make that payment.

In these circumstances, after careful review of the record, we conclude that the district court neither abused its discretion nor failed to comply with the mandates of <u>Bearden</u> and the applicable revocation statutes in revoking Holt's supervised release and determining that a prison sentence was part of the appropriate punishment. The judgment of the district court is affirmed.

_____